21-1063-bk
*Gasson v. Premier Capital, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term, 2021

Argued: April 4, 2022    Decided: July 29, 2022)

Docket No. 21-1063-bk

———————

ANTHONY J. GASSON,

*Debtor-Appellant,*

— v. —

PREMIER CAPITAL, LLC,

*Appellee.*\*

———————

B e f o r e :

CALABRESI, LYNCH, and LOHIER, *Circuit Judges.*

———————

Debtor-Appellant appeals from a judgment of the district court affirming
an order of the bankruptcy court denying the Debtor-Appellant's statutory

———————

\* The Clerk of Court is respectfully directed to amend the official caption in
this case to conform with the caption above.

discharge under 11 U.S.C. § 727(a)(2). Debtor-Appellant argues that the bankruptcy court erred by finding that he had an interest in Soroban, Inc., that was concealed to hinder creditors, and, in the alternative, that denying discharge was improper because the concealment began prior to the statutory one-year period set forth in § 727(a)(2)(A). The bankruptcy court did not err in finding that Debtor-Appellant had a valid interest in Soroban that was concealed to hinder creditors, and properly denied the discharge because the acts of concealment continued throughout the one-year period prior to his filing the bankruptcy petition. We therefore AFFIRM the judgment below.

---

H. BRUCE BRONSON, Bronson Law Offices PC, Harrison, NY, *for Debtor-Appellant*.

ELENI MELEKOU, Peter Antonelli (on the brief), Curran Antonelli, LLP, New York, NY, *for Appellee*.

---

GERARD E. LYNCH, *Circuit Judge*:

Debtor-Appellant Anthony J. Gasson ("Gasson") is a certified public accountant who has been self-employed as a financial consultant since the 1980s. Prior to 2001, Gasson found himself in financial difficulties after personally guaranteeing the debts of various manufacturing businesses that ultimately failed. In an apparent effort to make a fresh start and give Gasson's wife greater control of the family finances, the couple formed Soroban, Inc., in 2001. Soroban functioned primarily as a consulting business through which Gasson sold his

2

financial consulting services, and the couple agreed that Soroban would neither seek nor obtain bank financing. Although Gasson's wife nominally owned Soroban, Gasson ran the day-to-day operations, served Soroban's clients, and controlled the company's finances.

Appellee Premier Capital, LLC ("Premier") began pursuing Gasson in 2011 to collect on judgments resulting from his earlier debts. Gasson filed for bankruptcy in the Southern District of New York shortly thereafter, on September 27, 2012. Premier commenced an adversary proceeding against Gasson in 2014 requesting that the bankruptcy court deny Gasson's discharge pursuant to various provisions of 11 U.S.C. § 727(a). *See* Complaint to Deny Debtor's Discharge, *Premier Cap., LLC v. Gasson* ("*In re Gasson*"), Adv. Pro. No. 14-08217, (Bankr. S.D.N.Y. Mar. 31, 2014), ECF 1. Following a trial, the bankruptcy court (Sean H. Lane, *J.*) denied Gasson's discharge under § 727(a)(2) after finding that he had concealed his equitable interest in Soroban to hinder his creditors. The bankruptcy court also concluded that the one-year limitations period under § 727(a)(2)(A) was satisfied under the continuous concealment doctrine because Gasson continued to conceal his interest in Soroban throughout the one-year

3

period preceding Gasson's filing his bankruptcy petition. The district court (Nelson S. Román, *J.*) affirmed the bankruptcy court's decision.

On appeal, Gasson challenges the bankruptcy court's determinations that he had an interest in Soroban, that he concealed that interest with an intent to hinder creditors, and that the concealment occurred within the one-year statutory period. We conclude that the district court did not err in affirming the bankruptcy court's findings that Gasson had an interest in Soroban as a matter of New York property law and that Gasson had concealed his interest to hinder creditors within the one-year statutory period. We therefore AFFIRM the judgment of the district court.

## BACKGROUND

### I. Gasson's Debts and the Formation of Soroban

Gasson has long worked in New York as a financial consultant and certified public accountant. Prior to 2001, Gasson was also a part-owner of three companies that manufactured and sold clothing and accessories: Swirl Corporation, Nick Textiles, and Easley Textiles. Those companies sought reorganization under Chapter 11 in 1995, and eventually failed in 2003, leaving

4

behind substantial corporate debts that had been personally guaranteed by Gasson. Those debts eventually resulted in three judgments against Gasson for a total of $591,499.60. Those judgments were subsequently acquired by Premier, appellee in the case before us.

Gasson and his wife formed Soroban in 2001, in the midst of his financial troubles, in a purported effort to give Gasson's wife greater control over the family finances. Although Gasson's wife was listed as the sole owner and chair of the board of Soroban, Gasson himself had day-to-day control over the company and its affairs. Gasson was Soroban's sole employee, provided all of the consulting services Soroban offered to its clients, signed the vast majority of the company's checks, managed the movement of funds between Soroban's bank accounts, and signed promissory notes on Soroban's behalf. By comparison, Gasson's wife had little to no involvement in the operations of Soroban, and continued to work full-time as a nurse during the relevant period. From 2009 onwards, Soroban frequently had annual revenues in excess of $200,000, the vast majority of which came from consulting services provided by Gasson.

## II. Bankruptcy Court Proceedings and the Decision Below

Premier acquired the judgments against Gasson and began attempting to collect on them in 2011. On September 27, 2012, Gasson petitioned under Chapter 7 of the Bankruptcy Code to discharge his personal debts. On his bankruptcy schedules, Gasson listed $7000 in personal property, no cash on hand or in his bank accounts, and a value of $0 for his "individual consulting business." On March 31, 2014, Premier initiated an adversary proceeding arguing, among other things, that Gasson should be denied a discharge under 11 U.S.C. § 727(a)(2)(A) for having concealed his interest in Soroban in an effort to hinder his creditors.

The bankruptcy court concluded that Gasson had an equitable interest in Soroban under New York law, and that he had concealed that interest in an effort to hinder creditors. *See In re Gasson*, Adv. Pro. No. 14-08217, 2018 WL 6603737, at *10-16 (Bankr. S.D.N.Y. Dec. 13, 2018). Additionally, the bankruptcy court found that the concealment occurred within the one-year statutory period set forth in § 727(a)(2)(A) under the continuous concealment doctrine, which has been adopted in several of our sister circuits. *Id.* at *16-17. Under that doctrine "a concealment will be found to exist during the year before bankruptcy even if the

6

initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year." *In re Boyer*, 328 F. App'x 711, 714 (2d Cir. 2009) (quoting the doctrine as applied in other circuits). The district court affirmed the bankruptcy court's judgment. *See In re Gasson*, 629 B.R. 539 (S.D.N.Y. 2021). The present appeal followed.

## DISCUSSION

"We exercise plenary review over a district court's affirmance of a bankruptcy court's decisions, reviewing *de novo* the bankruptcy court's conclusions of law, and reviewing its findings of facts for clear error." *In re MPM Silicones, LLC*, 874 F.3d 787, 794 (2d Cir. 2017). "A finding of fact is clearly erroneous" if the record leaves the reviewing court with a "definite and firm conviction that a mistake has been made." *In re Reilly*, 245 B.R. 768, 772 (2d Cir. BAP 2000).

### I. Gasson Had an Interest in Soroban

Gasson argues that the bankruptcy court erred in determining that he had a property interest in Soroban. "Property interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979). "Unless some federal

7

interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* In the present case, the bankruptcy court acknowledged that property interests are defined by state law, *see In re Gasson*, 2018 WL 6603737, at *10, and correctly determined that Gasson had a beneficial property interest in Soroban as a matter of New York state law.

The bankruptcy court evaluated Gasson's beneficial interest in Soroban using the test enunciated in *In re Carl*, 517 B.R. 53, 65-66 (Bankr. N.D.N.Y. 2014). Under that test:

> First, courts consider whether a debtor previously owned a similar business. Second, courts look to see whether the debtor left his previous business venture under financial duress. Third, and most importantly, courts examine whether the debtor transferred his or her salary, or the right to receive salary to a family member or to a business entity owned by an insider. Fourth, courts evaluate whether the debtor is actively and actually involved in the success of the insider business. Finally, the debtor must retain some of the benefits of the salary, such as having expenses paid for by the insider or the business. Even if these factors are present, a court may grant a discharge if the debtor demonstrates a legitimate reason for the insider business relationship.

*Id.* (internal citations omitted). Though recognizing that property interests are determined by reference to state law, Appellant Br. at 24, Gasson does not argue that *Carl* is inconsistent with New York case law. Rather, he argues that *Carl* may be set aside as "not a binding precedent," or may be otherwise distinguished on its facts. *Id.* at 28-29. We agree that *Carl* is not binding. Moreover, the relevant portion of the *Carl* opinion does not acknowledge that property interests are defined by state law and fails to cite any authoritative state law cases. *See* 517 B.R. at 65-66. Therefore, we must first address whether the test enunciated in *Carl*, as applied by the bankruptcy court below, is consistent with New York law.

Under New York law, persons exercising dominion and control over an asset and the benefits derived therefrom may be found to have a de facto property interest in that asset.[1] There is no single list of factors that must be

---

[1] *See, e.g.*, *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 33 N.Y.3d 389, 399 (2019) (In the insurance context, New York courts identify "de facto" owners by examining whether "they exhibited the attributes of ownership, particularly that they exercised dominion and control over the corporation and its assets, and that they shared risks, expenses[,] and interest in the profits and los[s]es of the corporation."); *Metromedia, Inc. v. Tax Comm'n of the City of New York*, 60 N.Y.2d 85, 91 (1983) ("Although the parties' labeling of one as owner is not enough to create a taxable interest, a finding of such an interest is justified where that party exercises dominion and control over the property."); *McCormack Fam. Charitable Found. v. Fid. Brokerage Servs., LLC*, 195 A.D.3d 420 (N.Y. App. Div.), leave to

examined when determining if a property interest exists. Rather, New York courts engage in a general inquiry aimed at assessing the totality of the circumstances. The approach employed in *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 33 N.Y.3d 389 (2019) is instructive. In that case, the New York Court of Appeals did not endorse the trial court's "specific list of factors," but nonetheless found that the various factors included in the trial court's jury instructions "satisfactorily directed the jury to the ultimate inquiry of control over a professional corporation." *Id.* at 406 n.4. Those factors included: (1) whether the purported owners' dealings with the business were "designed to give [them] substantial control over the [business] and channel profits" to themselves; (2) whether they "exercised dominion and control" over business assets, including bank accounts; (3) the extent to which business funds were used

appeal denied, 37 N.Y.3d 912, 175 N.E.3d 1258 (2021) ("A defendant must have dominion and control over transferred assets to be liable as a transferee for a fraudulent conveyance. Dominion and control is the right to put the money to one's own purposes."); *Abele Tractor & Equip. Co. v. Schaeffer*, 137 N.Y.S.3d 174, 177 (3d Dep't 2020) ("In discerning the owner of a titled vehicle . . . the presumption arising out of the certificate of title may therefore be rebutted by evidence which demonstrates that another individual owned the vehicle in question. This may consist of proof that the other individual had possessory interest in the vehicle, with its attendant characteristics of dominion and control.").

for "personal rather than corporate purposes;" (4) whether they were responsible for "hiring, firing, and payment of salaries" for the employees; (5) whether "the day-to-day formalities of corporate existence were followed;" (6) whether the business "shared common office space and employees" with other companies owned by the purported owners; and (7) whether other parties "played a substantial role in the day-to-day and overall operation and management" of the business. *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 51 N.Y.S.3d 551, 556 (2d Dep't 2017) (summarizing jury instructions).

Taken as a whole, the factors enumerated by *Carl* also satisfactorily direct the bankruptcy court as finder of fact "to the ultimate inquiry of control over a professional corporation," *Carothers*, 33 N.Y.3d at 406 n.4, and appropriately address whether the debtor "exhibited the attributes of ownership" in the context of bankruptcy proceedings, *id*. at 399. All of the *Carl* factors considered by the bankruptcy court are consistent with the list of factors that formed part of the charge described by the New York Court of Appeals in *Carothers*, and with New York law in general. Gasson fails to identify, and our review has not revealed, any other factor utilized by New York appellate courts under New York law that

11

would point to a different result or affect the outcome of this case had the bankruptcy court explicitly addressed it. The bankruptcy court thus did not err by examining the factors enumerated in *Carl*.

Nor did the bankruptcy court err in finding that Gasson had a beneficial interest in Soroban in light of his history with similar businesses, the circumstances surrounding Soroban's founding, and his substantial control over both the business's finances and day-to-day operations. *See In re Gasson*, 2018 WL 6603737, at *10-12. All of the factors considered in *Carl* and in *Carothers* point, on this record, to the same conclusion: Gasson exercised complete dominion and control over Soroban, and thus had an ownership interest in it.

## II. Gasson Concealed His Interest in Soroban with the Intent to Hinder Creditors

Next, we address Gasson's argument that the bankruptcy court erred in determining that Gasson concealed his interest in Soroban with an intent to hinder his creditors. "To prove a § 727(a)(2) violation, a creditor must show an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)" within the statutory period. *In re Boyer*, 328 F. App'x at 714 (internal quotations and alterations

12

omitted); *see also* 11 U.S.C. § 727(a)(2). The bankruptcy court found that Gasson concealed his interest in Soroban because "he organized his affairs so that he would receive the benefit of Soroban without ever making such benefits within the reach of creditors," *In re Gasson*, 2018 WL 6603737, at *12, and generally engaged in a "pattern of deception" both before and during the bankruptcy proceedings, *id.* at 13. The bankruptcy court also found that Gasson's explanation for failing to properly fill out his bankruptcy schedules lacked credibility given his level of business sophistication and past experience with bankruptcy proceedings. *See id.* at *13.

On appeal, Gasson urges us to review the bankruptcy court's determinations *de novo*, and generally argues that the bankruptcy court engaged in an impermissible "hindsight approach" in finding that Soroban was used to conceal assets from creditors. *See* Appellant Br. at 29-32. Gasson also urges that we should view the evidence in the light most favorable to the debtor, and find that any purported acts of concealment were innocently motivated. *See* Appellant Br. at 32-35. Those arguments are unavailing.

As a preliminary matter, we reiterate that we review the bankruptcy court's findings of fact only for clear error. *See In re MPM Silicones*, 874 F.3d at 794. "[W]e have described § 727 as imposing an extreme penalty for wrongdoing, which must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (internal quotations and alterations omitted). But that liberal construction in favor of the debtor does not change the underlying standard of review, nor does it imply that all of the evidence presented at trial must be viewed in the light most favorable to the debtor. *See id.* at 234 (applying the conventional standards of review to a bankruptcy court ruling under § 727).

In the present case, the record evidence fully supports the bankruptcy court's findings that Gasson concealed his interest in Soroban, and that the concealment was done with an intent to hinder his creditors. *See In re Gasson*, 2018 WL 6603737, at *10-16. That evidence includes, among other things: (1) Gasson's denying any business affiliation with Soroban or salary derived from Soroban in response to Premier's informational subpoenas, *id.* at *12 ; (2) placing incorrect information on his bankruptcy schedules and otherwise obfuscating the

fact that he received substantial value from his consulting business, *id.* at *13; (3) routinely siphoning money out of Soroban bank accounts for personal use while avoiding a substantive paper trail, *id.*; and (4) creating Soroban following "rough times" when"[t]he IRS was seizing assets from [Gasson], and [he] was under threat from other creditors," *id.* at *15; *see also In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983) (badges of fraud may include financial difficulties, the threat of suits by creditors, and the general chronology of the events). The findings of the bankruptcy court on those matters were not clearly erroneous, and the court acted within its discretion in finding that Gasson's testimony to the contrary lacked credibility. *Id.* at *13, *16.

### III.  Gasson Concealed His Interest Within the Statutory Period.

Finally, we address the bankruptcy court's application of the continuous concealment doctrine. Under § 727(a)(2)(A), the party objecting to the discharge must establish that the wrongful act complained of occurred "within one year before the date of the filing of the petition." As applied in other circuits,[2] the

---

[2] Some variant of the continuous concealment doctrine, also referred to as the continuing concealment doctrine, has been applied by federal appellate courts in the Third, Fifth, Sixth, Seventh, Ninth, and Eleventh circuits. *See, e.g.*, *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993); *Thibodeaux v. Olivier (In re*

continuous concealment doctrine holds that "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year." *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993); *see also In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997) ("[A] transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing."). However, the continuous concealment doctrine still requires that the party objecting to discharge "prove an improper subjective intent during the year before bankruptcy." *Rosen*, 996 F.2d at 1533. In effect, the doctrine recognizes that "concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs

---

*Olivier*), 819 F.2d 550, 555 (5th Cir.1987); *In re Keeney*, 227 F.3d 679, 685 (6th Cir. 2000); *In re Kauffman*, 675 F.2d 127, 128 (7th Cir. 1981); *In re Lawson*, 122 F.3d 1237, 1242 (9th Cir. 1997); *In re Coady*, 588 F.3d 1312, 1317 (11th Cir. 2009). As discussed in *Olivier*, the doctrine predates § 727(a)(2)(A) and has a significant history dating back to at least the early 1900's. *See* 819 F.2d at 555 n.7 (collecting cases). It appears that no federal appellate court has ever explicitly rejected the doctrine as inconsistent with § 727(a)(2)(A).

within the year before bankruptcy and, therefore, that such concealment is within the reach of [§] 727(a)(2)(A)." *In re Olivier*, 819 F.2d 550, 555 (5th Cir. 1987).

We find the logic and the rationale behind the continuous concealment doctrine compelling, and adopt the formulation articulated by *Rosen* as law in this Circuit. Moreover, we conclude that the bankruptcy court appropriately applied that doctrine to conclude that Gasson had concealed his interest in Soroban within the statutory period.

On appeal, Gasson suggests that the bankruptcy court misapplied the doctrine by "completely disregard[ing] the Debtor's purpose in setting up his financial affairs the way he did," Appellant Br. at 36, and focusing on his intent in forming Soroban rather than his wrongful intent during the critical one-year period prior to filing the bankruptcy petition. The bankruptcy court's opinion appropriately considered Gasson's account of the circumstances surrounding Soroban's formation, but found the testimony supporting that account unconvincing in view of the other evidence in the record. *See, e.g.*, *In re Gasson*, 2018 WL 6603737, at *3 (summarizing his wife's testimony that "Soroban was created because her husband was not consulting at the time that the company

17

was created, that she and her husband had debts, and that they wanted to make a fresh start."); *id* at *15 (acknowledging Gasson's contention that "he was unaware of the debts now owned by Premier"). A reviewing court owes "particularly strong deference" where the fact findings are premised on credibility determinations. *Mathie v. Fries*, 121 F.3d 808, 812 (2d Cir. 1997). The bankruptcy court's rejection of Gasson's explanation was not clearly erroneous.

As for Gasson's intent during the critical one-year period, the bankruptcy court found that "[Gasson's] way of conducting his financial affairs persisted into the year prior to the Debtor's bankruptcy filing," and that "[t]his continuing concealment of his finances during the year prior to the bankruptcy filing is also reflected in [Gasson's] responses to the information subpoena before the bankruptcy and the information he provided in his Schedules and Statement of Financial Affairs filed with the bankruptcy." *In re Gasson*, 2018 WL 6603737, at *16-17. As discussed above, based on the record before us, the bankruptcy court's findings were highly persuasive, and certainly not clearly erroneous. The bankruptcy court thus did not err in concluding that § 727(a)(2)(A) was satisfied.

**CONCLUSION**

For the reasons set forth above, we conclude that the bankruptcy court and the district court properly denied the discharge of Gasson's debt pursuant to 11 U.S.C. § 727(a)(2). Accordingly, the judgment of the district court is AFFIRMED.